Aaron K. McClellan - 197185
amcclellan@mpbf.com
Steven W. Yuen - 230768
syuen@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA 94108-5530
Tel:    (415) 788-1900
Fax:    (415) 393-8087

Attorneys for Plaintiff
SETH ABRAHAMS

E-filing

**FILED**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
FEB 2 8 2012

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

**JCS**

SETH ABRAHAMS,

    Plaintiff,

v.

HARD DRIVE PRODUCTIONS, INC., AND
DOES 1-50,

    Defendants.

Case No.: **CV 12 1006**

**PLAINTIFF'S COMPLAINT**

DEMAND FOR JURY TRIAL

## I.    INTRODUCTION

1.    This is a civil action seeking declaratory relief based upon the improper past and continuing conduct of defendants Hard Drive Productions, Inc. (hereafter "Hard Drive") and Does 1-50 in harassing plaintiff and others like him to settle baseless and unfounded claims of purported infringement of Hard Drive's purported copyrighted works.

## II.    PARTIES

2.    Plaintiff Seth Abrahams is an individual over the age of 18 residing in the County of Alameda, California.

3.    Plaintiff is informed and believes, and thereon alleges that Hard Drive is an Arizona Corporation whose principal place of residence is in Maricopa County, and which does business worldwide including in the State of California, County of Alameda.

**Exhibit A**

1      4.      The true names and capacities of defendants named as Does 1 through 50 are presently

2  unknown to plaintiff.

3      5.      Plaintiff will amend this complaint setting forth the true names and capacities of these

4  fictitious defendants when they are ascertained.

5      6.      Plaintiff is informed and believes, and thereon alleges that each of the fictitious

6  defendants have participated in the acts alleged in this complaint to have been done by the named

7  defendant.

8      7.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times, each

9  defendant, whether named or fictitious, was the alter ego, agent, and/or employee of each of the other

10 defendant, and in doing the things alleged to have been done in the complaint, acted within the scope

11 of such agency and/or employment, and/or ratified the acts of the other.

12                          **III.    JURISDICTION**

13     8.      This action arises under the copyright laws of the United States, 17 U.S.C. sections 101

14 et seq.

15     9.      The court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. sections

16 1331 and 1338, and the Declaratory Judgment Act codified at 28 U.S.C. sections 2201 and 2202.

17     10.     This court has personal jurisdiction over Hard Drive because it has submitted itself to

18 the jurisdiction of this court by filing an action on November 21, 2011, action number C 11-05634

19 PJH, and which is related to this action.

20     11.     Due to Hard Drive's filing of prior action number C 11-01567 LB and its present action

21 number C 11-05634 PJH, its threats and notices of lawsuits and settlement demands to plaintiff, and its

22 conduct within this district, it has created an actual and continuing controversy within the court's

23 jurisdiction such that the court needs to declare the rights and other legal relations of plaintiff who is

24 seeking such declarations from the court.

25                          **IV.    VENUE**

26     12.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. section

27 1400(a) as Hard Drive has claimed that plaintiff infringed its purported copyrighted work by

28 downloading such works, and being responsible for such downloads where he resides.

PLAINTIFF'S COMPLAINT
PAGE 2

13. Venue is also proper in the Northern District of California as Hard Drive has consented to the venue of this court by filing action number C 11-05634 PJH in this district, its threats and notices of lawsuits and settlement demands to plaintiff, and by its conduct within this district which has created an actual and continuing controversy such that the court needs to declare the rights and other legal relations of plaintiff who is seeking such declarations from the court, and which is related to this action.

## V.    INTRADISTRICT ASSIGNMENT

14. Assignment of this action to the Oakland Division is proper as Hard Drive's present action number of C 11-05634 PJH is assigned to the Honorable Phyllis J. Hamilton in the Oakland Division per the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California (hereafter "Civil L.R.") 3-3(c) and 3-12.

## VI.    FACTUAL ALLEGATIONS

### A.    Hard Drive's Prior Lawsuit

15. On March 31, 2011, Hard Drive filed a complaint for copyright infringement which was assigned case number C 11-01567 LB (hereafter "prior action").

16. Based on Hard Drive's consent to proceed before a U.S. Magistrate Judge, the prior action was assigned to the Honorable Laurel Beeler.

17. In this prior action, Hard Drive failed to comply with Civil L.R. 3-16(b)(1) by failing to disclose "any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding."

18. Instead on March 31, 2011, Hard Drive violated Civil L.R. 3.16(b) by purposefully limiting and qualifying its disclosure to only state that Hard Drive does not have a parent corporation that owns 10% or more of its stock, and that there are no known persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities that may have a personal or affiliated financial interest in the subject matter or controversy.

///

1    19.    Plaintiff is informed and believes, and thereon alleges that Hard Drive reported in its

2    2011 annual report received on or about January 28, 2011 by the Arizona Secretary of State that Paul

3    Pilcher owns more than 20% of any class of shares issued by Hard Drive, or having more than a 20%

4    beneficial interest in Hard Drive, information which is publicly available electronically from the

5    Arizona Secretary of State at http://starpas.azcc.gov/scripts/cgiip.exe/WService=wsbroker1/names-

6    detail.p?name-id=11235797&type=CORPORATION.

7    20.    In this prior action, Hard Drive sued 118 anonymous doe defendants by improperly

8    joining them in one action without taking into account the requirements of 28 U.S.C. section 1400(a)

9    which requires that a defendant in a copyright infringement action may only be sued in the district

10   where the defendant or his or her agent resides or may be found.

11   21.    Plaintiff is informed and believes, and thereon alleges that Hard Drive improperly

12   joined multiple defendants in one action to avoid paying the $350 filing fee for each action had Hard

13   Drive properly filed separate actions for each defendant.

14   22.    Plaintiff is informed and believes, and thereon alleges that Hard Drive improperly

15   joined multiple defendants in one action to avoid having any cases dismissed due to failure to

16   prosecute by failing to pay the $350 filing fee for each separate defendant.

17   23.    Hard Drive improperly received the benefits and services of the court without paying

18   the requisite filing fee of $350 for each separate action against each defendant.

19   24.    Hard Drive's allegation that copyright infringement associated with plaintiff's Internet

20   Protocol (IP) Address occurred on March 21, 2011 is before the work's registration date of

21   November 18, 2011, and more than 3 months after the date of first publication on March 4, 2011.

22   25.    In this prior action, Hard Drive alleged that it owned the purported copyright to an adult

23   video entitled "Amateur Allure – Samantha Saint" (hereafter "work") which is purportedly registered

24   with the United States Copyright Office.

25   26.    Plaintiff is informed and believes, and thereon alleges that Hard Drive represented to

26   the U.S. Copyright Office that the work was first published on March 4, 2011.

27   27.    Plaintiff is informed and believes, and thereon alleges that the work was registered on

28   November 18, 2011.

PLAINTIFF'S COMPLAINT
PAGE 4

28. In the prior action, Hard Drive alleged that it was entitled to recover statutory damages and attorneys' fees per 17 U.S.C. section 504(c) as stated in its complaint at paragraph 31, and in its prayer for relief at paragraph 4.

29. A party is not entitled to recover statutory damages and attorneys' fees under 17 U.S.C. section 504(c) if the alleged infringement of copyright commenced before the effective date of its registration, unless such registration is made within three months after the first publication of the work per 17 U.S.C. section 412.

30. Hard Drive is not entitled to recover statutory damages and attorneys' fees.

31. After filing its prior action, Hard Drive then applied ex parte for expedited discovery seeking the names, addresses, and telephone numbers of the account holders whose IP addresses resolved to them.

32. Plaintiff is informed and believes, and thereon alleges that Hard Drive had entered into an agreement with a third party private investigator, who is unlicensed under California law but yet is required to be licensed, to log IP addresses that were allegedly transmitting Hard Drive's work via BitTorrent.

33. A BitTorrent tracker is a computer server.

34. A BitTorrent tracker is required to initiate any download of the work.

35. Plaintiff is informed and believes, and thereon alleges that Hard Drive gave the right to distribute the work to its unlicensed private investigator, otherwise it would not have been able to log the IP addresses.

36. Plaintiff is informed and believes, and thereon alleges that Hard Drive knew of the IP addresses of the BitTorrent trackers that were being used to distribute the work.

37. Plaintiff is informed and believes, and thereon alleges that Hard Drive never issued any Digital Millennium Copyright Act ("D.M.C.A.") takedown notices to the owners and/or operators of the BitTorrent trackers that were being used distribute the work.

38. Plaintiff is informed and believes, and thereon alleges that Hard Drive never issued any D.M.C.A. takedown notices to the owners and/or operators of the BitTorrent trackers, because it and/or its agents were using them as honeypots so that they could continue to log IP addresses.

PLAINTIFF'S COMPLAINT
PAGE 5

39.     Plaintiff is informed and believes, and thereon alleges that Hard Drive knew it could make more money by allowing its work to continue to be distributed instead of shutting down the BitTorrent trackers.

40.     Contrary to Hard Drive's allegation that venue under 28 U.S.C. section 1391(b) governs copyright infringement actions, it does not; only section 1400(a) governs venue in copyright infringement actions per the Supreme Court's holding in Schnell v. Peter Eckrich & Sons, Inc. (1961) 365 U.S. 260, 262-263.

41.     The Schnell court's analysis of venue in section 1400(b) for patent infringement actions should likewise be applied for venue in copyright infringement actions under section 1400(a).

42.     Plaintiff did not move to quash Hard Drive's subpoena issued to his internet service provider ("ISP").

43.     Plaintiff's ISP released his name, address, and telephone number to Hard Drive.

44.     After receipt of plaintiff's name, address, and telephone number, Hard Drive transmitted a letter demanding that he settle for $3,400. (Exhibit A at p.2, ¶ 3.) A true and correct copy of this letter is attached hereto as Exhibit A.

45.     In Hard Drive's settlement demand letter, it threatened plaintiff with a lawsuit. (Exhibit A at p.1, ¶ 5.)

46.     In Hard Drive's settlement demand letter, it notified plaintiff to act promptly by settling to avoid being named as a defendant in the lawsuit.

47.     In Hard Drive's settlement demand letter, it notified plaintiff that he was liable for copyright infringement by merely having an unsecured wireless network/router even though plaintiff did not download the work, did not tell anyone else to download the work, and did not know anyone was using his internet service to download the work. (Exhibit A at p.4, ¶¶ 12-13.)

48.     Along with its settlement demand letter, Hard Drive also transmitted a memo of law to plaintiff. A true and correct copy of this memo is attached hereto as Exhibit B.

49.     In its memo of law, Hard Drive notified plaintiff that he is liable for copyright infringement by simply being the account holder on his ISP account. (Exhibit B at p.3, ¶ 5.)

///

PLAINTIFF'S COMPLAINT
PAGE 6

50. In Hard Drive's settlement demand letter, it notified plaintiff that he may be liable for statutory damages of up to $150,000. (Exhibit A at p.2, ¶ 1.)

51. Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior action complaint along with the settlement demand letter and memo of law were designed to threaten, notify, intimidate, and to coerce plaintiff into paying the settlement demand of $3,400, especially when confronted with the statutory damages figure of $150,000.

52. Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior action complaint coupled with the settlement demand letter and memo of law were designed to threaten, notify, intimidate, and to coerce plaintiff into paying the settlement demand of $3,400 as it would be more expensive for him to retain an attorney to defend himself against the baseless and unfounded allegations.

53. Plaintiff is informed and believes, and thereon alleges that no facts existed for Hard Drive to represent, either in its prior action complaint or in its settlement demand letter, to plaintiff that Hard Drive was entitled to recover any statutory damages award given that the alleged infringement occurred on March 21, 2011 which is before the work's registration date of November 18, 2011, and more than 3 months after the date of first publication on March 4, 2011.

54. Plaintiff is informed and believes, and thereon alleges that Hard Drive's communications transmitted to plaintiff were designed to threaten, notify, intimidate, and to coerce him into settling the case despite the absence of any facts supporting liability against him.

55. Hard Drive's conduct here is no different than the Trevor Law Group, LLP's conduct when the People of the State of California sued the Trevor Law Group, LLP and other persons for abusive improper practices relating to unfounded and baseless Business and Professions Code section 17200 claims.

56. On January 19, 2012, Hard Drive dismissed its prior action without prejudice.

///

///

///

57.     Plaintiff is informed and believes that Hard Drive dismissed its prior action as it could not and did not want to address the issues and questions that the court had with the prior action, that it no longer wanted to proceed before a magistrate judge despite providing its prior consent, and that it also did not want to be sanctioned for failing to prosecute the case and for misjoining all anonymous doe defendants.

**B.      Hard Drive's Present Lawsuit**

58.     On November 21, 2011, Hard Drive filed a complaint for copyright infringement against a single John Doe defendant which was initially assigned case number C 11-05634 JCS (hereafter "present action"), and which was subsequently reassigned to the Honorable Phyllis J. Hamilton.

59.     In the present action, Hard Drive failed to comply with Civil L.R. 3-16(b)(1) by failing to disclose "any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding."

60.     Instead on November 21, 2011, Hard Drive violated Civil L.R. 3.16(b) by purposefully limiting and qualifying its disclosure to only state that Hard Drive does not have a parent corporation that owns 10% or more of its stock, and that there are no known persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities that may have a personal or affiliated financial interest in the subject matter or controversy

61.     Despite the fact that Hard Drive knew that the prior action was still pending, and that the present action was related to the prior action, Hard Drive failed to comply with Civil L.R. 3-3(c) which requires the refiling party to file a motion to consider whether cases should be related pursuant to Civil L.R. 3-12 so that the judge originally assigned to the action which had been dismissed should have the refiled case transferred to him or to her to avoid the unduly burdensome duplication of labor and expense.

///

///

PLAINTIFF'S COMPLAINT
PAGE 8

62.     Plaintiff is informed and believes, and thereon alleges that Hard Drive filed the present action, because it no longer wanted a magistrate judge to decide the case despite consenting to a magistrate judge in the prior pending and related action; Hard Drive's conduct was designed to improperly withdraw its prior consent to a magistrate judge.

63.     Plaintiff is informed and believes, and thereon alleges that Hard Drive purposefully failed to comply with Civil L.R. 3-3(c), because the previously assigned judge, the Honorable Laurel Beeler was likely to make rulings adverse to Hard Drive given its failure to prosecute the case.

64.     In the present action, Hard Drive alleged that it was entitled to recover statutory damages and attorneys' fees per 17 U.S.C. section 504(c) as stated in its complaint at paragraph 31, and in its prayer for relief at paragraph 2.

65.     Again, Hard Drive is not entitled to recover statutory damages and attorneys' fees, because Hard Drive claimed that the alleged infringement occurred on March 21, 2011 which is before the work's registration date of November 18, 2011, and more than 3 months after the date of first publication on March 4, 2011.

66.     On October 19, 2011, Hard Drive transmitted a settlement demand letter to plaintiff that it would be in his beneficial interest to settle Hard Drive's allegations of copyright infringement to avoid the expense of further litigation. A true and correct copy of the letter is attached as Exhibit C.

67.     Along with Hard Drive's settlement demand letter, Hard Drive transmitted a letter to plaintiff to preserve all evidence else be faced with spoliation sanctions. A true and correct copy of the letter is attached as Exhibit D.

68.     Plaintiff is informed and believes, and thereon alleges that as late as January 11, 2012, Hard Drive represented to the public that he was one of its agents "Top 25 Pirates." A true and correct copy of this redacted defamatory statement is attached hereto as Exhibit E at page 1. Plaintiff denies this unfounded and baseless defamatory allegation.

69.     Plaintiff is informed and believes, and thereon alleges that as late as January 12, 2012, Hard Drive's represented to the public that he was one of its agents "Top Pirates." (Exhibit E at p.2.) Plaintiff denies this unfounded and baseless defamatory allegation.

///

70.     Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior and present action complaint along with its threats and notices of lawsuits, memo of law of plaintiff's alleged absolute liability, settlement demands, and defamatory allegations were designed to threaten, notify, intimidate, embarrass, shame, and to coerce plaintiff into paying the settlement demand of $3,400 especially when confronted with a statutory damages figure of $150,000.

71.     On January 6, 2012, Hard Drive applied ex parte to take on an expedited basis the deposition of plaintiff who was not named as a defendant in Hard Drive's present action.

72.     Plaintiff is informed and believes, and thereon alleges that despite Hard Drive's erroneous position that plaintiff is vicariously liable for any acts or conduct occurring through his internet account, it purposely avoided naming plaintiff for the purposes of obtaining ex parte discovery in the present action on an expedited basis to prevent him from properly defending himself as a party against the baseless and unfounded allegations, and to cause him to incur attorneys' fees in defending himself at deposition to force him to settle.

73.     Hard Drive's tactics were improper as plaintiff had notified it that:   (1) he did not download the work, and (2) he did not know who downloaded the work.

74.     In response, Hard Drive's rejected plaintiff's statements of non-liability.

75.     Plaintiff is informed and believes, and thereon alleges that the acts and conduct of Hard Drive and its agents or employees as described herein were unlawful and/or improper, and are no different from the Trevor Law Group, LLP's conduct.

### C.     Hard Drive's Work is Not Copyrightable

76.     Article I, Section 8, Clause 8 of the United States Constitution, known as the Copyright Clause, empowers the United States Congress: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

77.     Thus, copyright is authorized only for works which promote the progress of science and the useful arts.

///

///

1         78.     Horizontal Stare Decisis or Circuit law binds all courts within a particular circuit,

2 including the court of appeals itself. (Hart v. Massanari (9th Cir. 2001) 266 F.3d 1155, 1171—"[T]he

3 first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also

4 future panels of the court of appeals.... Once a panel resolves an issue in a precedential opinion, the

5 matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme

6 Court" or "unless Congress changes the law.")

7         79.     Early Circuit law in California held that obscene works did not promote the progress of

8 science and the useful arts, and thus cannot be protected by copyright.

9         80.     Subsequent non-en banc decisions by the Ninth Circuit failed to follow this prior circuit

10 decision in California.

11         81.     Given the absence of any subsequent en-banc Ninth Circuit decisions, Supreme Court

12 precedent, or changes in the Constitution that copyright is authorized for works which does not

13 promote the progress of science and the useful arts, the subsequent Ninth Circuit decisions are void

14 and do not constitute binding precedent.

15         82.     Hard Drive's work does not promote the progress of science.

16         83.     Hard Drive's work does not promote the useful arts.

17         84.     Hard Drive has judicially admitted that its work is adult pornography.

18         85.     Hard Drive's work depicts obscene material.

19         86.     Plaintiff is informed and believes, and thereon alleges that to create the work, Hard

20 Drive and its agents and/or its employees violated laws which prohibited pimping, pandering,

21 solicitation and prostitution, including any claims of conspiracy.

22         87.     Hard Drive's work depicts criminal acts and/or conduct.

23         88.     Hard Drive's work is not copyrightable.

24  **VII.    FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF AND/OR JUDGMENT THAT PLAINTIFF IS NOT LIABLE TO HARD DRIVE FOR COPYRIGHT**

25                          **INFRINGEMENT AGAINST ALL DEFENDANTS**

26         89.     Plaintiff realleges and incorporates by reference as though fully stated here, paragraphs

27 1 to 88.

28 ///

PLAINTIFF'S COMPLAINT
PAGE 11

90. Although Hard Drive in its present action denies that it does not know if plaintiff is liable to it for copyright infringement, in extra-judicial communications, Hard Drive's position is completely the opposite—that plaintiff is liable to Hard Drive.

91. On or about June 30, 2011, Hard Drive, through its agent transmitted a letter to plaintiff which is attached hereto as Exhibit A.

92. In its letter, Hard Drive notified plaintiff that to avoid being named as a defendant in a copyright infringement action, he had to pay $3,400 to settle Hard Drive's claims. (Exhibit A at p.2, ¶ 3.)

93. In its letter, Hard Drive threatened plaintiff with a lawsuit. (Exhibit A at p.1, ¶ 5.)

94. Along with the settlement demand letter, Hard Drive transmitted a memo of law to plaintiff notifying him that he was absolutely and vicariously liable for copyright infringement simply by being the account holder of his ISP account. (Exhibit B at p.3, ¶ 5.)

95. In Hard Drive's memo of law, its position is that the account holder is liable for copyright infringement committed by any person who uses the account holder's internet access.

96. As late as January 11 and 12, 2012, Hard Drive gave notice to the public and plaintiff that plaintiff was one of its agents' "Top 25 Pirates" and "Top Pirates."

97. Hard Drive's present action, in which it allegedly denies that it does not know who infringed its work is false and mere pretext given its extra-judicial actions, conduct, and communications threatening lawsuits, and demanding settlements from plaintiff as alleged herein.

98. Plaintiff is informed and believes, and thereon alleges that Hard Drive is purposefully avoiding naming plaintiff so that it can improperly conduct expedited ex parte discovery upon plaintiff to preclude him from defending himself against Hard Drive's baseless and unfounded allegations.

99. Plaintiff is informed and believes, and thereon alleges that Hard Drive is purposefully conducting expedited ex parte discovery upon plaintiff in order to threaten, intimidate, and to coerce plaintiff into settling with Hard Drive.

100. As alleged in Hard Drive's present action, and based upon its actions and conduct as described herein, plaintiff denies that he is liable to Hard Drive for copyright infringement.

///

1    101.    Based on all the information stated herein, an actual and continuing controversy exists
2    between plaintiff and Hard Drive such that plaintiff needs the court to declare the rights between the
3    parties.

4    102.    Wherefore, plaintiff prays for the following relief.

## VIII.    PRAYER FOR RELIEF

Plaintiff seeks relief as follows:

7    103.    That the court issue an order declaring that plaintiff is not liable to Hard Drive for
8    copyright infringement, and/or he has not infringed Hard Drive's copyrights, if any;

9    104.    That the court issue an order declaring that Hard Drive's work is not copyrightable
10   and/or to strike its copyright registration as the work does not promote the progress of science and the
11   useful arts as required by the U.S. Constitution, including but not limited to the fact that the work is
12   obscene, was created by unlawful conduct and depicts unlawful activity, and that Hard Drive, its
13   owners, agents, and/or employees have engaged in unlawful activity and/or conduct such as pimping,
14   pandering, solicitation, and prostitution, including conspiracy to commit such acts.

15   105.    That the court issue an order declaring that Hard Drive has not mitigated damages,
16   including but not limited to being based upon the doctrines of estoppel and laches, and due to its
17   failure to issue D.M.C.A. take down notices to the BitTorrent trackers, and by continuing to allow
18   these BitTorrent trackers to continue to exist so that Hard Drive can continue to improperly demand
19   more settlements from non-liable defendants.

20   106.    That the court issue an order declaring that Hard Drive is not entitled to recover
21   statutory damages and attorneys' fees;

22   107.    That the court issue an order declaring that no infringement has occurred given that
23   Hard Drive had authorized its work to be distributed by its non-California and unlicensed private
24   investigators, who are in violation of California Business and Professions Code sections 7520 and
25   7521 while they were distributing and participating in the distribution of the work, and/or that Hard
26   Drive is guilty of unclean hands due to its and/or its agents' operation and use of honeypots and/or the
27   use of a third-party's services as honeypots;

28   ///

PLAINTIFF'S COMPLAINT
PAGE 13

108. That the court issue an order declaring that Hard Drive, its agents, and/or employees have unlawfully and improperly demanded settlements unsupported by facts and law which constitute copyright misuse, and which constitute a violation of California Business and Professions code section 17200;

109. That plaintiff be awarded his costs and attorneys' fees as provided by law, including but not limited to U.S.C. section 505;

110. That the court enter judgment in favor of plaintiff, and against Hard Drive and any other named defendants; and

111. For such other and further relief as the court deems just and proper.

## IX.    DEMAND FOR JURY TRIAL

112. Plaintiff demands a jury trial for all issues triable by jury.

DATED: February 28, 2012

MURPHY, PEARSON, BRADLEY & FEENEY

By _____
Steven W. Yuen
Attorneys for Plaintiff
SETH ABRAHAMS

SWY.20368057.doc

PLAINTIFF'S COMPLAINT
PAGE 14



# Steele | Hansmeier, PLLC

*A leading anti-piracy law firm*

June 30, 2011

**VIA U.S. MAIL**
Seth Abrahams
731 Catalina Dr
Livermore, CA 94550

> **Re:** **Hard Drive Productions Inc. v. Does 1-118**
> **Case No. 4:11-cv-01567-LB, Ref #5997**

Dear Mr. Abrahams:

Steele | Hansmeier, PLLC has been retained by Hard Drive Productions, Inc to pursue legal action against people who illegally downloaded their copyrighted content (i.e., "digital pirates"). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On March 21, 2011 at 6:13:44 PM (UTC), our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

> **Amateur Allure - Samantha Saint**
>
> *The ISP you were connected to: Comcast Cable*
>
> *Your IP Address you were assigned during your illegal activity: 98.248.90.217*

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On March 31, 2011 we filed a lawsuit in United States Federal Court in the Northern District of California against several anonymous digital pirates (Case No. 4:11-cv-01567-LB). Under the Federal Rules of Civil Procedure, our lawsuit against you personally will not commence until we serve you with a Complaint, which we are prepared to do if our settlement efforts fail. While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

# Exhibit A

01

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful. In it least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file. During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000. More recently , on December 22, 2010, a case in which a defendant was accused of illegally downloading 6 works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of **$3,400.00** as full settlement for the claims. This offer will expire on **July 1, 2011 at 4:00 p.m.** **CST**. If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

    (a)    Mailing a check or money order payable to "Steele Hansmeier Trust Account" to Steele | Hansmeier, PLLC, 161 N Clark Street #4700, Chicago, Illinois 60601; or

    (b)    Completing and mailing/faxing the payment authorization to Steele | Hansmeier, PLLC, 161 N Clark Street #4700, Chicago, Illinois 60601, Facsimile: (312) 893-5677.

Be sure to reference your case number and your "Ref#" on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

Please consider this letter to constitute formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a "spoliation of evidence" claim against you. Be advised that if we prevail on this additional claim, the court could award monetary sanctions, evidentiary sanctions and reasonable attorneys' fees. If you are unfamiliar with the nature of this claim in this context, please consult an attorney.

We strongly encourage you to consult with an attorney to review your rights in connection with this matter. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our client's claim against you.

Enclosed, please find a Frequently Asked Questions sheet, a payment authorization form and a sample of the Release that you will receive. We look forward to resolving our client's claim against you in an amicable fashion, through settlement.

Sincerely,


John L. Steele
Attorney and Counselor at Law

Enclosures

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

# FREQUENTLY ASKED QUESTIONS

**Q:    Why did I receive this letter?**

A:    You received this letter because copyright infringement involving your Internet account was detected by our agents.

**Q:    What are the benefits of settling?**

A:    The benefits of settling include avoiding the time and expense of litigation and associated risks.

**Q:    Will I remain anonymous if I settle?**

A:    Yes, you will remain anonymous if you settle.

**Q:    Has my privacy been violated?**

A:    No. A copyright infringement was detected over the public Internet or a Peer-to-Peer (P2P) Network involving your internet connection.

**Q:    I haven't infringed on a copyright, why did I receive a notice?**

A:    If you are unfamiliar with the content, we normally find that the infringement was the result of a spouse, child, roommate, employee, or business associate uploading, downloading or otherwise sharing or displaying the copyright protected material over your internet connection. Infringements can also result from an unsecured wireless network. In any of these scenarios the Internet Service Provider (ISP) account holder may be held legally responsible for the infringement(s) and settlement fees.

**Q:    What if I have an unsecured wireless network/router?**

A:    The Internet Service Provider (ISP) account holder is responsible for securing the connection and may be legally responsible for any infringement(s) that result from an unsecured wireless network/router.  This 'defense' has been raised in many criminal matters regarding such crimes as child pornography, and the courts have generally rejected this defense. As far as we are aware, this defense has never been successfully argued, in multiple contexts, including child pornography and civil copyright infringements actions.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

**Q:** **What if I own a business and an employee infringed o n a copyright?**

**A:** The Internet Service Provider (ISP) account holder may be responsible for securing the connection a nd may be legally responsible for any infringement(s) that occur. We normally find that business ow ners pass on out-of-pocket costs to the employee that was responsible for the infringement(s).

**Q:** **Will this go away if I just remove the file(s) from my computer(s)?**

**A:** No. In fact, removing the file(s) associated with your case(s) is a breach o f your obligation to preserve electronic ev idence.

**Q:** **How do I know that the IP Address listed in the notice is mine and not a fake?**

**A:** The notice, IP Address, and ass ociated account holder have all been correlated by your Internet Service P rovider (ISP) a third party organization that is not associated with us.

**Q:** **How do I make this go away?**

**A:** Paying the settlement fee will immediately release you from liability and close the case.

**Q:** **How do I know that you are legally autho rized act on behalf of the copyright owner?**

**A:** If you wish to receive additi onal information proving that we are legally authorized to act on behalf of the copyright owner(s) please contact us.

**Q:** **Do I need to hire an attorney?**

**A:** The decision to hire an attorney is completely up to you. We cannot give you legal advice, but speaking with an attorney is generally highly advisable. In some cases the settlement offered by us is significantly lower than the cost s associated with hiring an attorney.

**Q:** **Why are copyright lawsuits normally filed?**

**A:** Copyright owners file lawsuits because they have no other way to recover revenues lost to digital piracy.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

# Steele | Hansmeier, PLLC
*A leading anti-piracy law firm*

## PAYMENT AUTHORIZATION

I hereby authorize Steele | Hansmeier, PLLC to withdraw funds from the bank account or credit card listed below for the settlement amount and legal issue referred to on my Release and herein below.

**Case Name and Ref#:** _____

### PAYOR INFORMATION

Payor's Name: _____

Billing Address: _____

_____

Telephone Number: _____

Signature: _____     Date: _____

---

### PAYMENT INFORMATION

Payment amount:     $_____

Name on Bank Account / Credit Card: _____

**If paying via bank account:**

Type of Account:     Checking / Savings

Routing Number:     _____     Account Number: _____

**If paying via credit card:**

Card Number: _____     Exp. Date: _____

Card Type:     ☐ Master Card     ☐ Visa ☐ AmEx     ☐ Discover

CID Number: _____ (this is the last three digits on the back of your Master Card, Visa, or Discover Card, or the four digit number in the upper right corner on the front of your AmEx)

---

**Fax or mail this authorization to:**

Steele | Hansmeier, PLLC.
161 N. Clark Street, Suite 4700
Chicago, IL 60601

Fax: (312) 893-5677

Fax: 312.893.5677     |     161 N. Clark St. 4700, Chicago, IL 60601     |     Tel: 312.880.9160

www.wefightpiracy.com

# RELEASE

**Company: Hard Drive Productions, Inc.**
**IN RE: *Hard Drive Productions, Inc. v. Does 1-1000*, Case # 1:10-cv-05606**

**Settlement Purposes Only -**
**Inadmissible Under FRE 408**

BE IT KNOWN, that Steele | Hansmeier, PLLC on behalf of the Company named above, (hereinafter referred to as "Releasor"), for and in consideration of the sum of Two Thousand Nine Hundred ($2,900.00) Dollars, and other valuable consideration received from or on behalf of _____, (hereinafter referred to as "Releasee"), provided that Releasee's payment in full in the amount of $2,900.00 is received by Releasor within seven calendar days from the date of this release and such payment is made with no chargebacks, cancellations or revocations, does hereby remise, release, acquit, satisfy, and forever discharge the said Releasee, of and from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims, and demands regarding the lawsuit referred to as *Hard Drive Productions, Inc. v. Does 1-1000*, **Northern District of Illinois Federal Case Number 1:10-cv-05606**, or any claim related to any act Releasor alleges that Releasee may or may not have done, which said Releasor ever had, now has, or which any personal representative, successor, heir or assign of said Releasor, hereafter can, shall or may have, against said Releasee, by reason of any matter, cause or thing whatsoever, from the beginning of time to the date of this instrument. In consideration for foregoing release and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Releasee hereby releases Releasor, Steele | Hansmeier, PLLC., Media Copyright Group, LLC., and the owners and operators of the foregoing entities from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims and demands arising from or relating to the aforementioned lawsuit or any claim related to any act Releasor alleges that Releasee may or may not have done, which said Releasee ever had, now has, or which any heir, successor or assign of Releasee can, shall or may have against Releasor. Releasor and Releasee both agree that the terms of this agreement shall forever remain confidential, and both parties agree that they shall not discuss this agreement. Releasor specifically agrees to not disclose information it may have regarding Releasee, the litigation described herein, or any settlement discussions entered into between the parties unless ordered to do so by a valid court order or by permission of Releasee.

Written and Executed this _____ day of _____, 2011.

"RELEASOR"

John L. Steele, Esq.
Representative of Steele | Hansmeier, PLLC.
On behalf of Hard Drive Productions, Inc.

07



For Public Distribution

# Memo

**Re:**   An Assessment of the Open Wireless Defense

---

## Introduction

We have been asked to prepare a memorandum on the viability of the Open Wireless Defense in the context of civil copyright infringement claims.

## Background

The Open Wireless Defense is often considered by defense counsel on behalf of clients accused of illegally downloading copyrighted works via a wireless computer network. In short, the Open Wireless Defense is a claim that a third party surreptitiously accessed a defendant's unsecured wireless network and illegally downloaded a plaintiff's copyrighted works.

## Summary

Based on an extensive review of applicable case law and secondary materials, we conclude that the Open Wireless Defense has never been successfully used by a defendant to escape liability for claims of direct or indirect copyright infringement.  First, proving that a given wireless network was unsecured on a past date has proven to be prohibitively difficult, not to mention expose a defendant to liability for spoliation of evidence. Second, the defense has been rejected by the courts in every context in which it has been raised.  Finally, the defense does not trump the "willful blindness" doctrine in the indirect copyright infringement context.

## Discussion

We begin our discussion by describing the logistical difficulty of proving the Open Wireless Defense.  Then, we discuss the treatment the Open Wireless Defense has received in the courts.  Finally, we analyze the "willful blindness" doctrine as it relates to indirect copyright infringement and the Open Wireless Defense.

### Proving the Open Wireless Defense

As its name implies, a key element of the Open Wireless Defense is that a defendant's wireless network lacked an authentication scheme (and was thus accessible by third parties within signal range) on the date that infringing activity was observed on the defendant's network. According to our technical consultants, it is extremely challenging to prove that a given network was unsecured on a past date – even if a defendant refrained from destroying all applicable network traffic logs.  First, most network traffic logs cannot distinguish between authorized and unauthorized traffic.  Second, even if a log is able to so distinguish, it is often the case that BitTorrent packets are encrypted and thus not subject to

# Exhibit B

ready analysis. Finally, the cost of decrypting such packets and analyzing network traffic logs in preparation of litigation is often cost prohibitive.

In addition, although the vast majority of wireless routers are capable of logging network traffic, few individuals bother to enable that feature – even after they are notified of impending litigation. **Because of this, the instant such individuals raise the Open Wireless Defense, they invite a spoliation of evidence claim.** Courts have not hesitated to penalize copyright infringement defendants for their failure to retain evidence. *See Arista Records v. Tschirhart,* No. SA-05-CA-372-OG, 241 F.R.D. 462, 466 (W.D. Tex. Aug. 23, 2006). "In this case, defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment. No lesser sanction will adequately punish this behavior and adequately deter its repetition in other cases."

Rather than wade into the morass of the Open Wireless Defense, courts often simply prevent a defendant from raising it. *See Interscope Records v. Leadbetter,* No. 03 CV 4465 (DGT/RML), 2007 WL 1217705, at *8 n.8 (W.D. Wash. 2007); *Capitol Records Inc. v. Thomas-Rasset,* No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *7 (D. Minn. June 11, 2009);

## The Open Wireless Defense in the Courts

The Open Wireless Defense arises most frequently on motions to suppress evidence based on lack of probable cause. For example, in *United States v. Perez,* 484 F.3d 775 (5th Cir. 2007), a woman reported receiving an internet message containing child pornography from an individual with the Yahoo ID, "famcple." The police contacted the FBI, and a subpoena to Yahoo!, Inc. revealed that on the date the child pornography was sent, the transmitting computer used IP address 24.27.21.6. Through a second subpoena to an internet service provider, the FBI determined that the account holder associated with the IP address was Perez. A search warrant was obtained to search Perez's residence, and child pornography was found. Perez objected to the search warrant, arguing that mere association between an IP address and a physical address is insufficient to establish probable cause. He argued that because his wireless network was unsecured, other individuals could have connected to the Internet through his router and, consequently, used his IP address. **The Fifth Circuit flatly rejected Perez's argument, stating that "through it was possible that the transmissions originated outside of the residence to which the IP address was assigned, *it remained likely* that the source of the transmissions was inside that residence."** *Id.* **at 740 (emphasis added).**

In general, federal courts routinely deny motions to suppress based on an open wireless argument, holding that there was probable cause to search and seize defendant's computers. *See, e.g., United States v. Carter,* 549 F. Supp. 2d 1257, 1268-69 (D. Nev. 2008) ("[T]he Court agrees that … there would still have remained a likelihood or fair probability that the transmission emanated from the subscriber's place of residence and that evidence of child pornography would be found at that location."; *United States v. Merz,* 2009 WL 1183771, at *5 (E.D. Pa. May 4, 2009) ("The court also concludes there was a sufficient connection between the IP address … and the physical location to which the IP address was linked to establish probable cause to search the physical location."). *See also, United States v. Massey,* No. 4:09CR506-DJS, 2009 WL 3762322 (E.D. Mo. Nov. 10 2009); *United States v. Hibble,* No. CR 05-1410 TUC DCB (HCE), 2006 WL 2620349 (D. Ariz. Sept. 11, 2006).

The Open Wireless Defense has also been raised by defendants in civil copyright infringement actions. In *Arista Records, Inc. v. Musemeci,* the defense arose on a motion to vacate summary judgment. No. 03 CV 4465, 2007 WL 3124545, at *5 (E.D.N.Y. Sept. 18, 2007). **The court concluded that the defendant's claim that an unsecured wireless router at his residence could have been used by an outside party to commit the alleged infringing activity was not a meritorious defense and denied the motion.** *Id.* In *Capitol Records, Inc. v. Thomas-Rasset,* the court excluded expert testimony on the Open Wireless Defense because the defendants were unable to offer sufficient evidence in its support. No. No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *7 (D. Minn. June 11,

● Page 2

2009). In *Interscope Records v. Leadbetter*, the Open Wireless Defense was similarly excluded. No. 03 CV 4465 (DGT) (RML), 2007 WL 1217705, at *8 n.8 (W.D.Wash. 2007).

### Secondary Liability and the "Willful Blindness" Doctrine

The unlikely defendant who escapes liability for direct copyright infringement vis-à-vis the Open Wireless Defense will nevertheless have to contend with liability for contributory copyright infringement. Contributory infringement occurs when a party who, with knowledge of the infringing activity, induces causes, or materially contributes to the infringing conduct of another. *Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

A defense counsel's first instinct is to allege that a client is innocent where a client had no actual knowledge that the conduct it engaged in (i.e. providing internet access to copyright infringers) constituted contributory infringement. Before advancing those claims, however, an attorney would be well advised to take a close look at the conduct for which persons engaging in infringing activity have been held responsible. Because the typical wireless router is readily capable of logging traffic, a defendant cannot escape liability by claiming they never made the effort to analyze such traffic. Willful blindness is knowledge. *In re Aimster Copyright Litigation*, 334 F.3d 643, 654 (7th Cir. 2003); *Deep v. Recording Industry Ass'n of America, Inc.*, 540 U.S. 1107 (2004).

Thus, an internet account holder who maintains a wireless network and fails to monitor the traffic on the network is liable for contributory copyright infringement. *Id.* Copyright law may lead to harsh results, but it nevertheless is the law.

### Conclusion

The Open Wireless Defense is not viable. First, from a technical standpoint it is extremely challenging to establish that a wireless network was unsecured on a past date and if the related evidence has not been preserved then a defendant may be subject to liability for spoliation of evidence upon raising the defense. Second, it has never been successfully used to avoid liability for direct copyright infringement in any court in the United States. Finally, even if it were established that a third party used an account holder's internet account to illegally download copyright content, the account holder would not be able to escape liability for contributory copyright infringement.

● Page 3

C

# Steele Hansmeier PLLC
Intellectual Property Law Firm

38 MILLER
AVENUE, #263
MILL VALLLEY
CALIFORNIA,
94941
P: 415.325.5900
BLGIBBS@WEFIGHTPIRACY.COM

October 19, 2011

*Informal Settlement Letter*

*Via Email (mcb@hemispheres.pro, mcb@postmodern.com)*

> Re:   Case No. 4:11-cv-01566
> Client: Seth Abrahams

Dear Mr. Berch:

The purpose of this letter is to request a conference with you to discuss possible settlement of the copyright infringement relating to the above-named client. We feel like this would be a great opportunity to come to a mutually beneficial agreement and avoid the expense and time of further litigation.

We are aware that the Court may order the parties to participate in one or more pretrial conferences in order to facilitate settlement under the Federal Rules of Civil Procedure 16(a)(5). We feel, however, that the Court would appreciate our proactive attempt to solve this dispute amicably without the intervention of the Court.

We would like to meet and confer with you as soon as possible. We anticipate the meeting taking approximately one hour. Please contact our offices at the number above to set up a conference.

We thank you for your cooperation and look forward to hearing from you.

Sincerely,

Brett L. Gibbs, Esq.

BLG/gfy

**Exhibit C**



# Steele Hansmeier PLLC
Intellectual Property Law Firm

38 MILLER
AVENUE, #263
MILL VALLLEY
CALIFORNIA,
94941
P: 415.325.5900
BLGIBBS@WEFIGHTPIRACY.COM

October 19, 2011

*Preservation of Evidence (Spoliation) Warning Letter to Opposing Counsel*

**Via Email (mcb@hemispheres.pro, mcb@postmodern.com)**

> **Re: Case No. 4:11-cv-01566**
> **Client: Seth Abrahams**

Dear Mr. Berch:

## I. Demand for Preservation of Evidence

The purpose of this letter is to confirm the obligation of your client, Mr. Samuel Teitelbaum, to take reasonable steps to preserve all documents, tangible things and electronically stored information (hereinafter "ESI") potentially relevant to any issues in the above entitled matter. Preservation means taking reasonable steps to:

1. Ensure that potentially relevant documents, tangible things and ESI are <u>not destroyed, lost or relinquished to others,</u> either intentionally, or inadvertently such as through the implementation of an ordinary course document retention/destruction policy;

2. Ensure that potentially relevant documents, tangible things and ESI are <u>not modified</u> – an issue that arises particularly in the case of ESI (which may be modified by the simple act of accessing the information), and in the case of documents used on an ongoing basis in the operation of the business; and

3. Ensure that potentially relevant documents, tangible things and ESI <u>remain accessible</u> – again, an issue that arises particularly in the case of ESI, which may require particular forms of software or hardware to remain readable.

Failure to comply with this notice can result in severe sanctions and penalties being imposed by the Court for spoliation of evidence or potential evidence[1]. To avoid such sanctions it is

---

[1] *See, e.g., Krumwiede v. Brighton Associates, LLC*, 2006 WL 1308629 (N.D. Ill. May 6, 2006). (Default judgment granted, and sanctions issued, for deleting, altering and accessing electronic data despite litigation hold);

# Exhibit D

essential to ensure that potentially relevant materials are preserved intact and unmodified in their original form, until counsel has had an opportunity to assess the relevance of the records and the appropriate means of production of the records to opposing parties.

The obligation to preserve the relevant documents, tangible things and ESI arose when your client received notice from their ISP putting them on notice of this potential litigation.

Although we may bring a motion for an order preserving documents and things from destruction or alteration, your client's obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion. Nothing in this demand for preservation should be understood to diminish your existing obligation to preserve documents, tangible things, ESI and other potentially relevant evidence.

## II. Electronically Stored Information (ESI)

Importantly, the obligation to preserve documents applies to data and information in electronic form[2]. The obligation extends to all ESI, stored on any kind of electronic media. The possible forms of ESI include not only emails and word processing documents, but also spreadsheets and other accounting data, the contents of databases, electronically-stored voice mail records, archived and deleted files, autorecovery files, web-based files such as internet history logs, temporary internet files and "cookies," and metadata.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI relevant to this matter is limited, reasonable, and necessary. As you are aware, the recent state and federal laws require that you preserve and at the appropriate time produce all sources of ESI. For good cause shown, the court may order production of the ESI, even if it finds that it is not reasonably

---

*Arista Records v. Tschirhart*, No. SA-05-CA-372-OG, 241 F.R.D. 462, 466 (W.D. Tex. Aug. 23, 2006) ("In this case, defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment. No lesser sanction will adequately punish this behavior and adequately deter its repetition in other cases.")

[2] Courts have made it clear that all information available on electronic storage media is discoverable, whether readily readable ("active") or "deleted" but recoverable. *See, e.g., Easley, McCaleb & Assocs., Inc. v. Perry*, No. E-2663 (Ga. Super. Ct. July 13, 1994) ("deleted" files on a party's computer hard drive held to be discoverable, and plaintiff's expert was allowed to retrieve all recoverable files); *Santiago v. Miles*, 121 F.R.D. 636, 640 (W.D.N. Y. 1988) (a request for "raw information in computer banks" was proper and obtainable under the discovery rules); *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 167 F.R.D. 90, 112 (D. Colo. 1996 (mirrorimage copy of everything on a hard drive "the method which would yield the most complete and accurate results," chastising a party's expert for failing to do so); and *Northwest Airlines, Inc. v. Teamsters Local 2000, et al.*, 163 L.R.R.M. (BNA) 2460, (USDC Minn. 1999) (court ordered image-copying by Northwest's expert of home computer hard drives of employees suspected of orchestrating an Illegal "sick-out" on the internet).

accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive our client of its right to secure the evidence or the Court of its right to adjudicate the issue.

Electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists, we will seek all documents in their electronic form along with information about those documents contained on the media. We also will seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which no corresponding electronic files exist.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

## III. Avoiding Spoliation

You must act immediately to preserve potentially relevant ESI. Through discovery we expect to obtain from you a number of documents and things, including files stored on your client's computers and your client's computer storage media. In order to avoid spoliation, you need to preserve the data on the original media, or on exact copies of that media (sometimes referred to as image, evidentiary, or mirror copies), and be able to prove that the original matches the copy in every respect. Do not reuse any media to preserve this data.

Additionally, in order to avoid spoliation you may have to suspend certain normal computer maintenance procedure, including but not limited to such procedures as:

1. De-fragmenting hard drives;
2. Running any "disk clean-up" processes;
3. Purging the contents of e-mail repositories by age, capacity or other criteria;
4. Overwriting, erasing, destroying or discarding back up media;
5. Re-assigning, re-imaging or disposing of systems, servers, devices or media;
6. Running antivirus or other programs effecting wholesale metadata alteration;
7. Releasing or purging online storage repositories;
8. Using metadata stripper utilities;
9. Disabling server or IM logging;
10. Deleting internet cookies; and
11. Deleting browser history, bookmarks and favorites.

Our discovery requests will ask for certain data on the hard disks, floppy disks and backup media used in your client's computers, some of which data are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased is a reference to that file in a table on the hard disk; unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing.

Your client is also to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files); network access codes, 10 names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

## IV. Specific Requests

Accordingly, electronic data and storage media that may be subject to our discovery requests and that your client is obligated to maintain and not alter or destroy, include but are not limited to the following:

1. **Computers:** The following steps should immediately be taken to safeguard all computers.

   a. Computer: Your client is not to destroy or modify any computers used or potentially used in the downloading of the copyrighted content at issue in this case. This includes, but is not limited to:

i. Desktop computers, laptops, home computers, personal digital assistants, cell phones, Blackberrys, Palm Pilots or similar multi-functional devices, voicemail, digital cameras, other digital storage devices such as floppy disks, CD's, DVD's, zip drives, backup media, external hard drives and USB ("thumb") drives.

ii. Any components attached to or contained within the computers such as the hard drive, tape drive, computer bus, CPU, motherboard, RAM, storage controllers, media devices, modem, router, and monitor.

iii. Relevant electronic information, such as data files contained within those computers. This includes relevant electronic information stored on your client's behalf by third parties such as banks, professionals (such as accountants or lawyers), the government, insurers, third party service providers, affiliated companies, data warehouses or internet service providers.

b. Fixed drives attached to such computers: (i) a true and correct copy is to be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; and (iii) such copies and listings are to be preserved until this matter reaches its final resolution.

c. All floppy diskettes, CDs, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of delivery of this letter containing any electronic data relating to this matter are to be collected and put into storage for the duration of this lawsuit.

2. **The Copyrighted Content at Issue:** With regard to the copyrighted data file: Your client is not to modify or delete any data files, "deleted" files and file fragments related to the copyrighted content at issue in this case existing at the time of this letter's delivery, which meet the definitions set forth in this letter, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of this litigation.

3. **Networking Equipment:** With regard to any networking equipment: Your client is not to modify or delete any equipment used to connect to any network associated with your client's IP address relevant to this case. This includes, but is not limited to any modems and routers associated used or potentially used to connect to the network associated with said IP address.

4. **Programs Used to Download the Copyrighted Material:** With regard to any programs used or that could potentially have been used to download to the relevant

copyrighted content: Your client is not to modify or delete such programs. This includes, but is not limited to, any BitTorrent software or programs, used in any manner by your client, not just to download the copyrighted material.

5. **Access to Relevant Websites:** With regard to any websites where the relevant copyrighted material was found and downloaded by your client: Your client is not to modify or delete anything related to accessing these websites. This includes, but is not limited to, deleting internet cookies, deleting browser history, bookmarks and favorites.

6. **Online Data Storage on Mainframes and Minicomputers:** With regard to online storage and/or direct access storage devices attached to your client's mainframe computers and/or minicomputers: Your client is not to modify or delete any electronic data files, "deleted" files and file fragments existing at the time of this letter's delivery, which meet the definitions set forth in this letter, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of this litigation.

7. **Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media:** With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of this letter's delivery, contained any electronic: Your client is to stop any activity that may result In the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with their computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all of their computer systems.

8. **Replacement of Data Storage Devices:** Your client is not to dispose of any electronic data storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that may contain electronic data.

9. **Fixed Drives on Stand-Alone Personal Computers and Network Workstations:** With regard to electronic data which existed on fixed drives attached to stand-alone microcomputers and/or network workstations at the time of this letter's delivery: Your client is not to alter or erase such electronic data, and not to perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of this litigation.

10. **Programs and Utilities:** Your client is to preserve copies of all application programs and utilities, which may be used to process electronic data covered by this letter.

11. **Log of System Modifications:** Your client is to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data regardless of whether such modifications were made the client and/or any other third parties.

12. **Evidence Created Subsequent to This Letter:** With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not be destroyed and your client is to take whatever steps are appropriate to avoid destruction of evidence.

## V. What We Want You to Do

In order to assure that your obligation and your client's obligation to preserve documents and things will be met, we request you do the following:

1. Forward a copy of this letter to your client and all other persons and entities with custodial responsibility for the items referred to in this letter;

2. Provide Plaintiff with a copy of any correspondence you have sent or will send to your client regarding the preservation of all documents, tangible things and ESI potentially relevant to any issues in this matter;

3. With respect to Blackberry or similar multi-functional devices, voicemail, digital cameras and USB drives, please ensure that those devices (and in particular the devices of the above named individuals/employees) are immediately imaged by an IT department or professional. Since these devices often have limited memory, any delay may result in relevant ESI being destroyed. We also require confirmation of the dates when those devices are captured and imaged;

4. Preserve any log or logs of network use, whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time from to the present;

5. Provide Plaintiff with a letter containing the following information:

   a. Confirmation that your client is aware of his obligations explained above.

   b. The steps taken so far by your client to preserve the relevant documents, tangible things and ESI referenced above;

c. Provide a catalog of any spoliation, destruction, or modifications to any relevant documents, tangible things and ESI that has already occurred, either intentionally or unintentionally; and

d. Any measures taken to remedy the spoliation that has already occurred to any relevant documents, tangible things and ESI.

6. Provide Plaintiff with further letters cataloging and explaining any further spoliation that takes in the future with an explanation on what remedial measures have taken place to reduce or eliminate the harm caused by the spoliation.

We would welcome the opportunity to speak with you to discuss the scope of production of all documents, including the searching and production of ESI. We ask that you contact us to discuss, among other things, the appropriate search parameters for all electronic records in this matter.

We thank you in advance for your anticipated co-operation.

Sincerely,

Brett L. Gibbs, Esq.

BLG/gfy

08





**Exhibit E**

